

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 16  P 4: 54

LORETTA G. WHYTE
     CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WARREN C. SEGURA | CIVIL ACTION |
| VERSUS | NO. 04-2414 |
| BLUE FIN SERVICES, L.L.C. | SECTION "N" (3) |

### ORDER AND REASONS

Before the Court is Fluid Crane and Construction Inc.'s Motion for Partial Summary Judgment as to the Third-Party Claims of Blue Fin Services, L.L.C. (Rec. Doc. No. 32). For the reasons stated herein, **IT IS ORDERED** that the motion is **GRANTED**.

### Background

Plaintiff Warren Segura alleges that he was injured on or about May 14, 2004, while working for Third Party Defendant Fluid Crane and Construction, Inc. ("Fluid Crane"), on a fixed platform located in the Gulf of Mexico off the coast of Louisiana. Plaintiff asserts that his injuries resulted from the negligence and fault of Defendant/Third Party Plaintiff Blue Fin Services, Inc. ("Blue Fin") and/or Defendant GBS Scaffolding & Services, Corp. ("GBS"). Blue Fin seeks

contractual indemnity from Fluid Crane based on a document referred to as Delivery Ticket Number 1149, which is dated May 7, 2004 and was signed on behalf of Fluid Crane by an employee, Sidney Celestine.[1] Fluid Crane seeks dismissal of Blue Fin's indemnity claims.

Through their briefing, the parties have agreed that, if Blue Fin is found to have been at fault in causing Plaintiff's injuries, the Louisiana Oilfield Anti-Indemnity Act, La. R.S. 9:2780, precludes recovery by Blue Fin of any damages paid to Plaintiff, or attorney's fees and costs incurred in defending against Plaintiff's claims. They likewise now agree that Blue Fin cannot recover attorney's fees and costs incurred in seeking indemnity from Fluid Crane. Given these concessions, the remaining issue concerns Fluid Crane's contractual liability for sums expended in Blue Fin's defense – attorney's fees and other costs – if Blue Fin is absolved from any liability to Plaintiff.[2]

## Law and Analysis

Assuming that Blue Fin is not found to be at fault for Plaintiff's injury, Fluid Crane contends that the indemnity provision in question, which actually is found on the reverse side of the two-page "delivery ticket" document, is not part of the parties' contract. Fluid Crane further argues that it cannot be held responsible for sums expended for Blue Fin's defense because the scope of the indemnity provision – even if deemed to be part of the parties' contract – does not encompass such sums.

---

[1] A copy of the actual document in question is attached as Exhibits 5 & 6 to Fluid Crane's Statement of Uncontested Material Facts and as Exhibit "A" hereto. A blank exemplar of the form, which is in triplicate, also is attached as Exhibit 7 to Fluid Crane's Statement of Uncontested Material Facts.

[2] Fluid Crane also contests Blue Fin's assertion, in its third-party complaint, that Fluid Crane is contractually obligated to "release" Blue Fin from any and all of Plaintiff's claims. See Third Party Complaint at ¶6. Blue Fin offers no response to this assertion in its opposition memorandum. Hence, the Court treats Fluid Crane's position regarding this point as unopposed.

### A. Identifying the Provisions of the Contract

Fluid Crane maintains that the indemnity provision is not part of the parties' agreement for several related reasons. Emphasizing that it is found on the back side of the two-sided, triplicate form, Fluid Crane first argues that the provision is unnecessary because the front side of the form provides a legally effective lease and sale agreement without resort to the back side of the document. Citing the well-established principles that indemnity provisions addressing one's own negligence must be unequivocal and that, in the instance of ambiguity, a form contract is construed against the drafter, Fluid Crane also avers that no language on the front side of the document clearly communicates an intent to incorporate the provisions on the back side of the document into the parties' agreement. Finally, Fluid Crane points out that the only signature or initials on the entire document are found at the bottom of its front side.

Fluid Crane's criticism of the Blue Fin "delivery ticket" is not without some merit. Indeed, it would have been quite simple for Blue Fin to have included a statement on the front side of the document that unequivocally refers the signatory to the additional provisions on the back side of the document. Blue Fin instead has provided only the somewhat confusing statement on the front side of the document: ". . . . Renter or buyer acknowledges that he has read and fully understands the within rental contract and agrees to be bound by all of the terms, conditions and provisions hereof."

Nevertheless, the Court finds that Fluid Crane is not entitled to dismissal, via summary judgment, of Blue Fin's remaining indemnity claim on this particular ground. The language on the back side of the document, which appears under the heading "General Conditions

of Rental Agreement" and contains several references to the "listed rental equipment" and the "rental agreement," is sufficient to create a genuine issue of material fact regarding the inclusion of the indemnity provision in the rental agreement reflected on the front side of the document. Nor can it be said, as a matter of law, that Fluid Crane did not have sufficient notice of the existence of the indemnity provision. The provision is not buried in a multi-page document. Rather, it is the fifth of nine sentences/short paragraphs on the back side of a two-sided form that can be seen by simply flipping over the document. Indeed, the provisions on the back side can be seen (though not read) through the front side of the document.[3] Furthermore, the parties to the agreement are not unsophisticated consumers with no prior business dealings. Rather, they are commercial entities that have used – apparently without complaint – the same standard form contract to complete similar transactions in the past.[4] *Cf. Primeco, Inc. v. Specialty Coatings, Inc.*, No. 94-1759, 1995 WL

---

[3] *See* Exhibit 7 to Fluid Crane's Statement of Uncontested Material Facts. This is true even though the form still would have been in its "attached" triplicate format at the time of signing. The Court further notes that Fluid Crane has not asserted that Blue Fin prevented or hindered any efforts by its representatives to review the terms on the reverse side of the delivery ticket at the time that it was signed or shortly thereafter. *Compare Locie v. Anton's Cleaners*, 1993 WL 30808 (Mass. App. Div. 2/4/93) (plaintiff's mother prevented from reviewing terms on back side of "Receipt and Agreement" because no language on the front referred her to the reverse and the document "was held in a type of metal container which firmly held the document in place, face up, and did not permit examination of the reverse"); *O'Brien v. Okemo Mountain, Inc.*, 17 F. Supp. 2d 98, 103 (D. Conn. 1998) (notice of forum selection clause found on the reverse side of a ski lift ticket, bearing no instructions on the front of the ticket to read the back, that was affixed to the plaintiff's jacket immediately upon purchase was inadequate).

[4] *See* Transcript of Rule 30(b)(6) Deposition of Blue Fin Services, L.L.C., at 38- 47, attached as Exhibit B to Blue Fin's Opposition Memorandum (Rec. Doc. No. 33). The pink copy of the triplicate form is designated as the "Customer Copy." No suggestion has been made that this document was not provided to Fluid Crane.

686767 (E.D. La. 11/17/95) (indemnity clause on back of pre-printed rental agreement that continued a previous rental was enforceable against commercial entity that had previously entered into similar rental agreements with indemnitee).

B. <u>The Scope of the Indemnity Provision</u>

Turning to the issue of whether the indemnity provision in question encompasses attorney's fees, the provision itself provides:

> Lessee agrees to fully hold harmless and indemnify the lessor from all claims or suits for injuries, loss or damage to persons or property while equipment is in lessee's possession, regardless of the grounds of said claims or suits, including the fault of the lessor, and to notify lessor immediately in writing upon learning of the existence of any incident which may give rise to any such claim or suit.

In this instance, the Court is not required, nor does it attempt, to determine each and every term that is sufficiently broad enough to include an obligation to indemnify another for attorney's fees and costs incurred in defending against a claim or suit. Here, the provision at issue indisputedly does not expressly impose, for example, a duty to "defend" or to indemnify for "loss" or "expenses" or "costs." Thus, notwithstanding the inclusion of the word "fully," only indemnity from "claims and suits" would be required, if such indemnity were not barred by the Louisiana Oilfield Anti-Indemnity Act. Accordingly, under these circumstances, Fluid Crane has no obligation to indemnify Blue Fin for any attorney's fees or other costs of defense that it may incur in defending against Plaintiff's claims. *See Perry v. Chevron*, 887 F.2d 624, 629-30 (5th Cir. 1989) (under Louisiana law, obligation to "indemnify and hold . . . harmless from and against any damage and claims for . . injury . . ." did not require indemnity for costs or attorney's fees incurred in defending

against suit); *Pro-Boll Chem. & Fertilizer Co., Inc. v. United States Fire & Guar. Co.*, No. 01-1531, 2004 WL 3495323, *9-10 (W.D. La. 11/15/2004) (same conclusion with respect to provision requiring indemnity and to be held harmless "against any and all liability"); *see also Jessop v. City of Alexandria*, 871 So. 2d 1140 La. App. 3d Cir.) (defense not owed under lease as it spoke only as to indemnification), *writ denied*, 883 So. 2d 991 (La. 2004); *Kinsinger v. Taco Tico, Inc.*, 861 So. 2d 669, 671-73 ( La. App. 5th Cir. 2003) (distinguishing clauses obligating "defense" or indemnity for "loss" and finding no obligation to indemnify for attorney's fees and other defense costs with clause covering only "any claims or damages"); *South Cent. Bell Tel. Co. v. Gaines Petr. Co., Inc.*, 499 So. 2d 521, 525 (La. App. 2d Cir. 1986) (obligation to hold harmless, defend, and indemnify any costs and expenses held to include reasonable attorney's fees and expenses for indemnitee's defense); *Roberie v. Sinclair Refining Co.*, 252 So. 2d 488, 496-97 (La. App. 3d Cir. 1971) (obligation to hold harmless and indemnify "from any and all liability for damages" and "from all liabilities and claims for loss, damage or injury" did not encompass duty to indemnify for attorney's fees).

In *Signal Oil & Gas Co. v. The Bare W-701*, 654 F.2d 1164, 1177-78 (5th Cir. 1981), *cert. denied*, 455 U.S. 944, 102 S.Ct. 1440 (1982), which is cited by Blue Fin, the court of appeals did not determine whether state or federal law controlled the indemnity question presented there. In any event, that clause was much broader in scope than the one at issue here. Specifically, it required the indemnitor to "indemnify and hold . . . harmless from and against any and all loss, cost, damage, expense, claims, actions and liability . . . ." *Signal Oil*, 654 F.2d at 1177. Other federal cases allowing recovery of attorney's fees based on more general indemnity language likewise are distinguishable, or otherwise not controlling, in that they were decided under federal general

6

maritime law, involve legal rather than contractual indemnity, provide little or no explanation for their conclusions, and/or were decided without the benefit of the more recent cases construing Louisiana law that are cited above. *See, e.g, Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1241 (5th Cir. 1980); *Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1103 (5th Cir.), *cert. denied*, 444 U.S. 979, 100 S. Ct. 480 (1979); *Cormier v. Rowan Drilling Co.*, 549 F.2d 963, 969-71 (5th Cir. 1977); *Loffland Bros. Co. v. Roberts*, 386 F.2d 540, 550-51 (5th Cir. 1967), *cert. denied*, 389 U.S. 1040, 88 S. Ct. 778 (1968).

### Conclusion

Although the Court find that a genuine issue of material facts exists with respect to the inclusion of the indemnity provision in the parties' contract, Fluid Crane is entitled to judgment as a matter of law with respect to the scope of the indemnity provision. Accordingly, because none of the relief sought by Blue Fin based on that provision is recoverable, **IT IS ORDERED** that Fluid Crane's motion for partial summary judgment against Blue Fin (Rec. Doc. No. 32) is **GRANTED**.

New Orleans, Louisiana, this 16th day of March 2006.

KURT D. ENGELHARDT
UNITED STATES DISTRICT JUDGE

7

# BLUE FIN Services, LLC

P. O. Box 10008
New Iberia, LA 70562
Phone (337) 359-8563

DELIVERY TICKET # 1149

RM1
Rev

Charge To: FLUID CRANE
Phone: 364-6191

Ordered By: ROBERT BROUSSARD
Purchase Order: 040587
Job #: JM HUBER
Block #: S/T 21
Delivery Location: YARD

Date Out: 5/7/04
Time Out:
Date In:
Time In:

| Quantity | Description of Equipment | Unit ID # | Rate Per Day $ | Rate Per Week $ | Rate Per Month $ | # of Days Rental | Total Rental Charges $ |
|---|---|---|---|---|---|---|---|
| 1 | 900 AIR COMPRESSOR | | 300 | 900 | 2700 | | |
| 3 | AIR SPIDER | AA004 | 90 | 270 | 810 | | |
| | AIR SPIDER | AA005 | 90 | 270 | 810 | | |
| | AIR SPIDER | AA006 | 90 | 270 | 810 | | |
| 3 | ROLLS OF SPIDER CABLE | RESALE | | | | | 570 — |
| 3 | SETS OF FUEL FILTERS | RESALE | | | | | |
| 3 | SETS OF OIL FILTERS | RESALE | | | | | |
| 3 | BEAM CLAMPS | | 20 | 60 | 180 | | |
| | BEAM CLAMP | | 20 | 60 | 180 | | |
| | BEAM CLAMP | | 20 | 60 | 180 | | |
| 3 | TRANSFER CHAIN | | 15 | 45 | 135 | | |
| | TRANSFER CHAIN | | 15 | 45 | 135 | | |
| | TRANSFER CHAIN | | 15 | 45 | 135 | | |

Special Instructions or Specific Needs for Rental (example - rheostats, slings, extra filters, cable, etc.)?

This is a binding contract meaning the person(s) who signs this contract acknowledges and knowfully understands the instructions regarding the use and operation of this rented or sold equipment. Renter or buyer further acknowledges that he has read and fully understands the within rental contract and agrees to be bound by all of the terms, conditions and provisions hereof. Renter or buyer acknowledges that he has received a true and correct copy of this agreement at the time of execution hereof. Renter or buyer also acknowledges that equipment is in safe and operating condition upon receival of equipment. Any modifications, alterations, or changes to nullify equipment's standard operation places liability directly on the renter or buyer of the equipment in question.

_Sidney Celestine_
Signature of Authorized Agent or Representative

WHITE COPY - BLUE FIN       YELLOW COPY - CONTROL       PINK


EXHIBIT A front side

General Conditions of Rental Agreement

The Lessee of listed rental equipment agrees to the following conditions of this rental agreement:

Lessee accepts full responsibility and liability for any and all damages to listed equipment on rental agreement due to improper operations, maintenance, and / or lubrication, freezing, fire, theft, windstorm, hailstorm, flood, riot, insurrection, strike, explosion, collision, upset, acts of terrorism, damages while being transported, binded, or unbinded, loaded, or unloaded, or for any causes whatsoever other than ordinary wear and tear of the equipment in question.

Lessee agrees to pay for repairs or replacement of all parts damaged and all labor for said repairs and replacement and authorizes lessor to make such repairs and replacement required solely through ordinary wear and tear.

Lessee agrees to return all equipment and accessories to lessor's business facility, in as good condition as when received, ordinary wear and tear accepted.

Lessee agrees to fully hold harmless and indemnify the lessor from all claims or suits for injuries, loss or damage to persons or property while equipment is in lessee's possession, regardless of the grounds of said claims or suits, including the fault of the lessor, and to notify lessor immediately in writing upon learning of the existence of any incident which may give rise to any such claim or suit.

Lessee agrees to keep the lessor informed of the location of the leased equipment at all times. Failure by the lessee to inform the lessor of the location of the said equipment after written demand to do so shall immediately double the rental rate charged until the equipment is located and the lessor is so notified. The lessee agrees to pay all expenses incurred in locating said equipment.

Lessee agrees to not assign, transfer, sublease, or otherwise part with the possession of the leased equipment either directly or indirectly. Not to commit or permit any act whereby listed equipment or any part thereof shall or may be seized, taken in execution, attached, removed, destroyed or injured.

Lessee agrees that in the case of default of any of the terms of this agreement, lessor may, at its option enter the premises operated or controlled by the lessee where the equipment is used or any premises operated or controlled by the lessee where said equipment may be found and remove the same there from, without notice or demand, and without being guilty of any trespass or wrongdoing. Lessor is not liable for any damages incurred during the removal of the said equipment.

Lessee agrees to pay 1.5% per month, total interest per year of 18% on past due accounts and an additional 25% in principal and interest if any of said accounts are placed in the hands of an attorney for collection by the lessor.

EXHIBIT A
Back Side

345